1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-00181-001-TUC-JGZ (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Jacob Richard Mendez, | |
| Defendant. | |

On November 30, 2016, Magistrate Judge Jacqueline Rateau issued a Report and Recommendation ("R&R") in which she recommended that Defendant Jacob Richard Mendez's Motion to Suppress Evidence (Doc. 39) be denied.[1]  (Doc. 60.)  Defendant filed an Objection to the R&R on December 27, 2016.  (Doc. 64.)  The government filed a response on February 9, 2017.  (Doc. 77.)   For the reasons stated herein, the Court will adopt the R&R and deny Defendant's Motion to Suppress Evidence.

### STANDARD OF REVIEW

The Court reviews de novo the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the R&R. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999);

---

[1] The R&R also recommended that Defendant's Motion to Suppress Statements filed on September 26, 2016 (Doc. 46) be granted.  The government did not file an Objection to the R&R. The Court has reviewed the record and concludes that Magistrate Judge Rateau's recommendation with respect to Defendant's Motion to Suppress Statements is not clearly erroneous.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

*see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998). If the Court rejects the credibility findings of the magistrate judge, a de novo hearing is required. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

## FACTUAL BACKGROUND

Neither party objected to the Magistrate Judge's findings of fact.  The factual background contained in Magistrate Rateau's R&R (Doc. 60) is adopted as supplemented by the additional facts in this Order.

## DISCUSSION

Defendant's Objection presents two arguments: (1) the search of Defendant's cell phone following his arrest at the border was an unconstitutional, warrantless search; (2) the search of Defendant's cell phone was an investigatory search, not a border search.

**1.       The government did not need a warrant to search Defendant's cell phone**

The government has authority to conduct routine searches and seizures at the border, without probable cause or a warrant.  *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004).  Although the United States Supreme Court noted in *Flores-Montano* that there are "reasons that might support a requirement of some level of suspicion in [border searches involving] highly intrusive searches of the person - dignity and privacy interests of the person being searched," *id*. at 152, the Court has not defined "whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out." *United States v. Seljan*, 547 F.3d 993, 1000 (9th Cir. 2008).  "The reasonableness of a search or seizure depends on the totality of the circumstances." *United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013).  Applying this test, the Ninth Circuit has held that reasonable suspicion is not required for customs officials to search a laptop or other personal electronic storage device at the border where the search consists of powering on a laptop, opening folders and opening files.  *See United States v. Arnold*, 533 F.3d 1003, 1008 (9th Cir. 2008). Reasonable suspicion is required, however, for a computer search that begins as a cursory review at the border but transforms into a forensic examination of the computer's hard

1   drive.  *Cotterman*, 709 F.3d at 957.

2           Under this body of case law, the search of Defendant's phone was permissible

3   under the border search exception.  First, Agent Woods' search of Defendant's phone

4   consisted of a manual inspection of the text messages and photos within the phone.  (TR

5   11/7/16, pg. 10, lines 14-19.)  Because Agent Woods' search was akin to the opening of

6   folders and files at issue in *Arnold*, no reasonable suspicion was required.  Agent Woods

7   did not engage in a forensic inspection of Defendant's phone such that reasonable

8   suspicion was required under *Cotterman*. 709 F.3d at 967 (distinguishing between a

9   manual review of files on an electronic device, which does not require reasonable

10  suspicion, and application of computer software to analyze a hard drive, which does).

11  However, even if reasonable suspicion was required to search Defendant's cell phone,

12  Agent Woods' search would have been supported by reasonable suspicion in light of the

13  fact that Agent Woods knew that agents had discovered a large amount of cocaine and

14  methamphetamine in Defendant's car and knew that drug trafficking organizations often

15  communicate using cellular phones.  (TR 11/7/16, pgs. 16-18, 36.)  *See Cotterman*, 709

16  F.3d at 968 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981) for the principle

17  that reasonable suspicion is defined as "a particularized and objective basis for suspecting

18  the particular person stopped of criminal activity.").

19          Defendant argues that the requirements for cell phone searches at the border have

20  been altered by the United States Supreme Court's decision in *Riley v. California*, 134 S.

21  Ct. 2473, 2482 (2014).  In *Riley*, the Supreme Court held that a warrant is required for the

22  search of a cell phone incident to a lawful arrest.  The Court reasoned that courts

23  "generally determine whether to exempt a given type of search from the warrant

24  requirement 'by assessing, on the one hand, the degree to which it intrudes upon an

25  individual's privacy and, on the other, the degree to which it is needed for the promotion

26  of legitimate governmental interests.'"  *Id*. at 2484 (citing *Wyoming v. Houghton*, 526

27  U.S. 295, 300 (1999)).  In *Riley*, the Court identified officer security and preservation of

28  evidence as the legitimate government interests supporting a search incident to arrest.

Balancing these interests against an individual's privacy interests in a cell phone, the Court found that the governmental interests were minimal, given that digital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape, and that the risk of destruction of evidence is low once law enforcement officers have secured a cell phone.  *Id.* at 2485-86.  The Supreme Court gave considerable weight to the privacy interests inherent in cell phones, stating that "a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is."  *Id.* at 2491.

*Riley* did not address whether a warrant is required for the manual search of a cell phone at the border, but under the balancing test set forth in *Riley* this Court concludes that a warrant was not required in order for Agent Woods to manually search Defendant's cell phone.  The governmental interest at stake in a border search is "rooted in 'the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country.'"  *Cotterman*, 709 F.3d at 960 (citing *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).  Border searches are generally deemed reasonable simply by virtue of the fact that they occur at the border, and individual privacy rights must be balanced against the sovereign's interests.  *Cotterman,* 709 F.3d at 960.  That balance "is qualitatively different ... than in the interior" and is "struck much more favorably to the Government."  *Id.*  On the other side of the balancing test, the *Riley* Court gave weight to "the storage capacity of cell phones" and the "interrelated consequences for privacy," such as the collection of many distinct types of information in one place, the ability to reconstruct the owner's private life through photographs, and the potential for long-term data storage.  *Riley*, 134 S. Ct. at 2489.  Those same privacy interests were at issue in the forensic search of a laptop in *Cotterman*. 709 F.3d at 964 ("laptop computers, iPads and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential

business documents, medical records and private emails.")   The Ninth Circuit in *Cotterman* balanced the privacy interests associated with forensic examination of a laptop against the government's interest in a secure border and concluded that only reasonable suspicion was required to justify the forensic examination. In light of that holding, and given the similarity between the privacy interests at stake in the search of a cell phone and the forensic examination of a laptop, the Court concludes that *Riley's* warrant requirement does not implicitly overrule *Cotterman* or otherwise extend to the case at bar.[2]

**2.**     **Although Defendant had been arrested and detained before the search was conducted, the search was a border search**

Defendant contends that a border search extends only to suspected contraband seized at the border and because agents had discovered drugs in his vehicle hours prior to searching his cell phone, the search of his cell phone was an investigatory search incident to his arrest, not a border search.[3]   The Court disagrees.   Agent Woods' testimony establishes that the search of Defendant's cell phone was a border search for contraband; Agent Woods testified that he searched Defendant's cell phone for "any implicating messages or evidence of the crime at hand ***and also of anything that might allude to or evidence of a separate criminal nature.***"   (TR 11/7/16, p. 11 (emphasis added).)   Agent Woods further explained that "evidence of a separate criminal nature" could include child

---

[2] In *United States v. Lara*, 815 F.3d 605 (9th Cir. 2016), the Ninth Circuit extended the holding in *Riley* to a probation officer's search of a probationer's phone, concluding that a warrant is required even though a probationer's status as a probationer significantly diminished his Fourth Amendment rights.   Defendant argues that this Court should apply *Riley* to the border search context just as the *Lara* court applied *Riley* to the probation search context.   Although *Lara* and this case involve similar privacy interests in electronic devices, the governmental interests at stake in *Lara* -- combating recidivism and helping probationers integrate back into the community -- are not as compelling as the governmental interest at issue here: a secure border.   Thus the outcome of the balancing test in *Lara* is not determinative of the outcome of the pending Motion.

[3] This issue was not fully briefed during the report and recommendation proceedings: Defendant raised this issue in his Motion to Suppress Evidence, the government did not address the issue in its response to the Motion, Defendant did not re-urge the issue in his reply, and the Magistrate Judge did not discuss the issue in her decision.   Both parties did some briefing of the issue in the objection and response to the R&R.

pornography or "something not as … blatant [that] might have just furthered a separate criminal investigation."  (TR 11/7/16, pgs. 11-12.)  *See Arnold*, 533 F.3d at 1008 (reasonable suspicion is not required for customs officials to search a laptop or other personal electronic storage device at the border where the search consists of powering on a laptop, opening folders and opening files in search of child pornography).

Defendant does not cite to, and this Court is not aware of, any case law holding that the border search exception only applies to the first contraband discovered.  Because the primary purpose of a border search is to seize contraband property sought to be brought into the country, *see United States v. Guzman-Padilla*, 573 F.3d 865, 877 (9th Cir. 2009), the government may search wherever evidence of contraband may be found, so long as the scope and duration of the search is reasonable.  *Cotterman*, 709 F.3d at 960.[4]  The Ninth Circuit has held that a border search was reasonable in scope where agents took apart a car, *see United States v. Guzman-Padilla*, 573 F.3d 865, 879 (9th Cir. 2009) (collecting cases authorizing suspicionless disassembly of a vehicle), and when agents manually searched the files within a laptop.  *See Arnold*, 533 F.3d at 1009 (approving unintrusive search of laptops as reasonable).  Here, by searching Defendant's cell phone text messages and photos, Agent Woods could have uncovered text communications or photographs indicating that additional contraband was entering the

---

[4] Defendant argues that, unlike *Cotterman*, where the suspected contraband was the digital data, the suspected contraband at issue in this case was the drugs, and thus, the purpose of the government's search of the cell phone did not flow directly from the purposes of the border search exception.  (Doc. 64, pp. 7-8.)  This argument is not sound. First, as acknowledged by the Defendants, a proper purpose of a border search is to discover contraband.  *Cotterman* and *Arnold* make evident that electronic devices such as phones can contain contraband. Thus, Agent Woods was entitled to search for contraband on Defendant's phone.  Second, the fact that contraband was not found in Defendant's cell phone, does not demonstrate that Agent Woods' search did not flow directly from the purposes of the border search exception. The reasonableness or purpose of a search cannot be measured in hindsight by the fruits of the search. Third, an officer's subjective purpose in conducting a search is not relevant to determining whether a search is constitutionally permissible. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) ("Fourth Amendment reasonableness 'is predominantly an objective inquiry'"; "We ask whether 'the circumstances, viewed objectively, justify [the challenged action.'  If so, that action was reasonable 'whatever the subjective intent' motivating the relevant officials."). Rather, as noted above, the reasonableness of a border search depends on the totality of the circumstances, including the scope and duration of the deprivation.  *Cotterman,* 709 F.3d at 960.

country in conjunction with the contraband Defendant was transporting, or that Defendant was smuggling contraband in locations that the government had not yet searched.[5]

Finally, the fact that the search of Defendant's cell phone may have occurred two hours after Defendant entered the Port does not compel the conclusion that the search was unreasonable.[6]   There is no precise time limit on when a border search must be completed.  *See Arnold*, 533 F.3d at 1005 (affirming suspicionless search of laptop and detention that lasted "several hours.")  The Ninth Circuit has upheld border searches as reasonable except where the search involved the destruction of property, was conducted in a particularly offensive manner, or was highly intrusive -- the concerns identified by the Supreme Court.  *United States v. Seljan*, 547 F.3d 993, 1002-03 (9th Cir. 2008) (en banc) ("Even when we have recognized the possibility that there might be a limit of the permissible scope or manner of a given [border] search . . . we have usually concluded that the limit had not been exceeded, consistent with the Supreme Court's conclusion that the government's authority to search at the border is broad and 'at its zenith.'")  The Ninth Circuit has "considered the question of whether a prolonged detention pursuant to a

---

[5] Agent Woods testified that by the time he searched Defendant's cell phone, he knew that 21 packages of illegal drugs had been discovered in the front passenger seat and rear seats of Defendant's vehicle.  (TR 11/7/16, p. 7.)  It is unclear from the record whether customs officials had completed an exhaustive search of Defendant's vehicle prior to Agent Woods' inspection of Defendant's cell phone.

[6] Although the Government was unable to establish precisely how much time elapsed between Defendant's arrival at the Port of Entry and Agent Woods' search of Defendant's phone, a reasonable inference from the testimony is that the search occurred within two hours of Defendant's entry.  Defendant suggests that it could have been an hour and a half after Defendant first arrived at the Port of Entry or longer.  (Doc. 64, p. 9.)   The government suggests that it is reasonable to conclude that the phone was reviewed an hour and a half to two hours after the Defendant entered the Port. (Doc. 74-1, p. 6.)  The parties agree that: the Defendant arrived at the Port of Entry at 10:39 a.m.; Defendant invoked his rights at approximately 12:15 p.m.; Agent Woods asked Defendant outside of the interview whether the phone belonged to Defendant and, after Defendant said that it was, Agent Wood went through the phone by hand.  (Doc. 60 p. 3.)  Agent Woods testified that the first thing he typically does if there's a phone involved is to manually go through it to see if there's anything relevant to the crime at hand or any other potential criminal violations (TR 11/7/16, p. 41, lines 14-22); however, Agent Woods could not recall whether he conducted the cell phone search after he asked the Defendant if it was his phone.  (Doc. 60, p. 3.)

suspicionless border search might be unreasonable, without finding that it was." *Id.* at 1003 (citing *United States v. Gonzalez-Rincon*, 36 F.3d 859, 861, 863-64 (9th Cir. 1994) (upholding border search where the defendant was detained for several hours to monitor her bowel movements.)) The Court notes that during the two-hour time period at issue in this case, officers x-rayed Defendant's vehicle, searched the vehicle, identified anomalies, and extracted 19 packages of cocaine and two packages of methamphetamine concealed within the front and rear seats of the vehicle.  The fact that Agent Woods may not have searched the phone until two hours after Defendant entered the Port, or after Defendant had been placed under arrest, does not, under the facts of this case, convert the search of the phone from a border search to a search incident to an arrest.  *See United States v. Ramos*, 190 F. Supp. 3d 992, 999 (S.D. Cal. 2016) (finding no legal authority or reasoning supporting the proposition that a border search is converted into a search incident to arrest once the arrest occurs at the border).

For the foregoing reasons, the Court concludes that the search of Defendant's cell phone was reasonable.

## CONCLUSION

Based on the Court's independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

1.  The Report and Recommendation (Doc. 60) is ADOPTED;

2.  Defendant's Motion to Suppress Statements (Doc. 46) is GRANTED;

3.  Defendant's Motion to Suppress Evidence (Doc. 39) is DENIED.

Dated this 9th day of March, 2017.

Honorable Jennifer G. Zipps
United States District Judge